Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address

HARRIS L. COHEN, ESQ. Bar #119600
HARRIS L. COHEN, A PROF. CORP.
5305 ANDASOL AVE.
ENCINO, CA 91316
TEL 818-905-5599 FAX 818-905-5660
hcohen00@aol.com

FOR COURT USE ONLY

☐ *Movant appearing without an attorney*
☒ *Attorney for Movant*

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION**

| In re: | CASE NO.: 2:19-bk-24639-VZ |
|---|---|
| | CHAPTER: 13 |

CLAIRE M ALMEDA

**NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (with supporting declarations) (REAL PROPERTY)**

DATE: 2/11/2020
TIME: 9:30 a.m.
COURTROOM: 1368

Debtor(s).

**Movant:** Magnum Property Investments, LLC and Strategic Acquisitions, Inc.

1. **Hearing Location:**

   ☒ 255 East Temple Street, Los Angeles, CA 90012  ☐ 411 West Fourth Street, Santa Ana, CA 92701
   ☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367  ☐ 1415 State Street, Santa Barbara, CA 93101
   ☐ 3420 Twelfth Street, Riverside, CA 92501

2. Notice is given to the Debtor and trustee (*if any*)(Responding Parties), their attorneys (*if any*), and other interested parties that on the date and time and in the courtroom stated above, Movant will request that this court enter an order granting relief from the automatic stay as to Debtor and Debtor's bankruptcy estate on the grounds set forth in the attached Motion.

3. To file a response to the motion, you may obtain an approved court form at www.cacb.uscourts.gov/forms for use in preparing your response (optional LBR form F 4001-1.RFS.RESPONSE), or you may prepare your response using the format required by LBR 9004-1 and the Court Manual.

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

4. When serving a response to the motion, serve a copy of it upon the Movant's attorney (or upon Movant, if the motion was filed by an unrepresented individual) at the address set forth above.

5. If you fail to timely file and serve a written response to the motion, or fail to appear at the hearing, the court may deem such failure as consent to granting of the motion.

6. ☒ This motion is being heard on REGULAR NOTICE pursuant to LBR 9013-1(d). If you wish to oppose this motion, you must file and serve a written response to this motion no later than 14 days before the hearing and appear at the hearing.

7. ☐ This motion is being heard on SHORTENED NOTICE pursuant to LBR 9075-1(b). If you wish to oppose this motion, you must file and serve a response no later than (*date*) _____ and (*time*) _____; and, you may appear at the hearing.

    a. ☐ An application for order setting hearing on shortened notice was not required (according to the calendaring procedures of the assigned judge).

    b. ☐ An application for order setting hearing on shortened notice was filed and was granted by the court and such motion and order have been or are being served upon the Debtor and upon the trustee (if any).

    c. ☐ An application for order setting hearing on shortened notice was filed and remains pending. After the court rules on that application, you will be served with another notice or an order that specifies the date, time and place of the hearing on the attached motion and the deadline for filing and serving a written opposition to the motion.

Date: <u>1/10/2020</u>

                      HARRIS L. COHEN, A PROF. CORP.
                      Printed name of law firm (if applicable)

                      HARRIS L. COHEN, ESQ.
                      Printed name of individual Movant or attorney for Movant

                      Signature of individual Movant or attorney for Movant

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*    Page 2    F 4001-1.RFS.RP.MOTION

Page 2

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY AS TO REAL PROPERTY

1. **Movant is the:**

    ☐ Holder: Movant has physical possession of a promissory note that either (1) names Movant as the payee under the promissory note or (2) is indorsed to Movant, or indorsed in blank, or payable to bearer.

    ☐ Beneficiary: Movant is either (1) named as beneficiary in the security instrument on the subject property (e.g., mortgage or deed of trust) or (2) is the assignee of the beneficiary.

    ☐ Servicing agent authorized to act on behalf of the Holder or Beneficiary.

    ☒ Other (*specify*):
    Foreclosure sale buyer of property on 12/18/19

2. **The Property at Issue (Property):**

    a. Address:

    *Street address*:   7322 W. 90TH ST.
    *Unit/suite number*:
    *City, state, zip code*:  LOS ANGELES, CA 90045 - APN - 4119-017-004

    b. Legal description, or document recording number (including county of recording), as set forth in Movant's deed of trust (attached as Exhibit _2___):

3. **Bankruptcy Case History:**

    a. A ☒ voluntary ☐ involuntary  bankruptcy petition under chapter ☐ 7 ☐ 11 ☐ 12 ☒ 13 was filed on (*date*) _12/16/2019_ .

    b. ☐ An order to convert this case to chapter ☐ 7 ☐ 11 ☐ 12 ☐ 13  was entered on (*date*) _____.

    c. ☐ A plan, if any, was confirmed on (*date*) _____.

4. **Grounds for Relief from Stay:**

    a. ☒ Pursuant to 11 U.S.C. § 362(d)(1), cause exists to grant Movant relief from stay as follows:

        (1) ☐ Movant's interest in the Property is not adequately protected.

            (A) ☐ Movant's interest in the Property is not protected by an adequate equity cushion.

            (B) ☐ The fair market value of the Property is declining and payments are not being made to Movant sufficient to protect Movant's interest against that decline.

            (C) ☐ Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with the Debtor.

        (2) ☒ The bankruptcy case was filed in bad faith. face page filing with one creditor to interfere with foreclosure sale

            (A) ☒ Movant is the only creditor, or one of very few creditors, listed or scheduled in the Debtor's case commencement documents.

            (B) ☐ The Property was transferred to the Debtor either just before the bankruptcy filing or after the filing.

            (C) ☐ A non-individual entity was created just prior to the bankruptcy petition date for the sole purpose of filing this bankruptcy case.

            (D) ☐ Other bankruptcy cases have been filed in which an interest in the Property was asserted.

            (E) ☒ The Debtor filed only a few case commencement documents with the bankruptcy petition. Schedules and the statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

            (F) ☒ Other (*see attached continuation page*).   See separate declaration attached.

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

(3) ☐ *(Chapter 12 or 13 cases only)*

    (A) ☐ All payments on account of the Property are being made through the plan.
      ☐ Preconfirmation ☐ Postconfirmation plan payments have not been made to the chapter 12 trustee or chapter 13 trustee.

    (B) ☐ Postpetition mortgage payments due on the note secured by a deed of trust on the Property have not been made to Movant.

(4) ☐ The Debtor filed a Statement of Intentions that indicates the Debtor intends to surrender the Property.

(5) ☐ The Movant regained possession of the Property on *(date)* _____,
    which is ☐ prepetition ☐ postpetition.

(6) ☒ For other cause for relief from stay, see attached continuation page.   see attached declaration.

b. ☐ Pursuant to 11 U.S.C. § 362(d)(2)(A), the Debtor has no equity in the Property; and, pursuant to § 362(d)(2)(B), the Property is not necessary to an effective reorganization.

c. ☐ Pursuant to 11 U.S.C. § 362(d)(3), the Debtor has failed, within the later of 90 days after the order for relief or 30 days after the court determined that the Property qualifies as "single asset real estate" as defined in 11 U.S.C. § 101(51B) to file a reasonable plan of reorganization or to commence monthly payments.

d. ☐ Pursuant to 11 U.S.C. § 362(d)(4), the Debtor's filing of the bankruptcy petition was part of a scheme to delay, hinder, or defraud creditors that involved:

    (1) ☐ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval; or

    (2) ☒ Multiple bankruptcy cases affecting the Property.

5. ☒ **Grounds for Annulment of the Stay.** Movant took postpetition actions against the Property or the Debtor.

    a. ☒ These actions were taken before Movant knew the bankruptcy case had been filed, and Movant would have been entitled to relief from the stay to proceed with these actions.

    b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____.

    c. ☐ Other *(specify)*:

6. **Evidence in Support of Motion: (*Declaration(s) MUST be signed under penalty of perjury and attached to this motion*)**

    a. The REAL PROPERTY DECLARATION on page 6 of this motion.

    b. ☒ Supplemental declaration(s).

    c. ☐ The statements made by Debtor under penalty of perjury concerning Movant's claims and the Property as set forth in Debtor's case commencement documents. Authenticated copies of the relevant portions of the case commencement documents are attached as Exhibit _____.

    d. ☐ Other:

7. ☒ **An optional Memorandum of Points and Authorities is attached to this motion.**

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                              Page 4                              **F 4001-1.RFS.RP.MOTION**

Page 4

**Movant requests the following relief:**

1. Relief from the stay is granted under:  ☒ 11 U.S.C. § 362(d)(1)  ☐ 11 U.S.C. § 362(d)(2)  ☐ 11 U.S.C. § 362(d)(3).

2. ☒ Movant (and any successors or assigns) may proceed under applicable nonbankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property. to complete the foreclosure sale, obtain the trustee's deed allow the trustee to issue the deed, and evict the occupants

3. ☐ Movant, or its agents, may, at its option, offer, provide and enter into a potential forebearance agreement, loan modification, refinance agreement or other loan workout or loss mitigation agreement.  Movant, through its servicing agent, may contact the Debtor by telephone or written correspondence to offer such an agreement.

4. ☒ Confirmation that there is no stay in effect.

5. ☒ The stay is annulled retroactive to the bankruptcy petition date.  Any postpetition actions taken by Movant to enforce its remedies regarding the Property shall not constitute a violation of the stay.

6. ☒ The co-debtor stay of 11 U.S.C. §1201(a) or § 1301(a) is terminated, modified or annulled as to the co-debtor, on the same terms and conditions as to the Debtor.

7. ☒ The 14-day stay prescribed by FRBP 4001(a)(3) is waived.

8. ☐ A designated law enforcement officer may evict the Debtor and any other occupant from the Property regardless of any future bankruptcy filing concerning the Property for a period of 180 days from the hearing on this Motion:
   ☐ without further notice, or  ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

9. ☐ Relief from the stay is granted under 11 U.S.C. § 362(d)(4):  If recorded in compliance with applicable state laws governing notices of interests or liens in real property, the order is binding in any other case under this title purporting to affect the Property filed not later than 2 years after the date of the entry of the order by the court, except that a debtor in a subsequent case under this title may move for relief from the order based upon changed circumstances or for good cause shown, after notice and hearing.

10. ☐ The order is binding and effective in any bankruptcy case commenced by or against any debtor who claims any interest in the Property for a period of 180 days from the hearing of this Motion:
    ☐ without further notice, or  ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

11. ☐ The order is binding and effective in any future bankruptcy case, no matter who the debtor may be:
    ☐ without further notice, or  ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

12. ☐ Upon entry of the order, for purposes of Cal. Civ. Code § 2923.5, the Debtor is a borrower as defined in Cal. Civ. Code § 2920.5(c)(2)(C).

13. ☐ If relief from stay is not granted, adequate protection shall be ordered.

14. ☐ See attached continuation page for other relief requested.

Date: 1/10/2020

HARRIS L. COHEN, A PROF. CORP.
Printed name of law firm (*if applicable*)
HARRIS L. COHEN, ESQ.
Printed name of individual Movant or attorney for Movant

Signature of individual Movant or attorney for Movant

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

# REAL PROPERTY DECLARATION

I, (*print name of Declarant*) PETER BAER _____, declare:

1.  I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto. I am over 18 years of age. I have knowledge regarding Movant's interest in the real property that is the subject of this Motion (Property) because (*specify*):

    a.  ☐  I am the Movant.

    b.  ☒  I am employed by Movant as (*state title and capacity*): President of Strategic Acquisitions, Inc. the manager of Magnum Property Investments, Inc.

    c.  ☐  Other (*specify*):

2.  a.  ☒  I am one of the custodians of the books, records and files of Movant that pertain to loans and extensions of credit given to Debtor concerning the Property. I have personally worked on the books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant. These books, records and files were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the actions, conditions or events to which they relate. Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event. The business records are available for inspection and copies can be submitted to the court if required.

    b.  ☐  Other (*see attached*):

3.  The Movant is:

    a.  ☐  Holder: Movant has physical possession of a promissory note that (1) names Movant as the payee under the promissory note or (2) is indorsed to Movant, or indorsed in blank, or payable to bearer. A true and correct copy of the note, with affixed allonges/indorsements, is attached as Exhibit _____.

    b.  ☐  Beneficiary: Movant is either (1) named as beneficiary in the security instrument on the subject property (e.g.,mortgage or deed of trust) or (2) is the assignee of the beneficiary. True and correct copies of the recorded security instrument and assignments are attached as Exhibit _____.

    c.  ☐  Servicing agent authorized to act on behalf of the:

        ☐  Holder.
        ☐  Beneficiary.

    d.  ☒  Other (*specify*): Movant purchased the Property at a foreclosure sale on 12/18/19

4.  a.  The address of the Property is:

        *Street address*:  7322 W. 90th St.
        *Unit/suite no.*:
        *City, state, zip code*: Los Angeles, CA 90045 - APN - 4119-017-004

    b.  The legal description of the Property or document recording number (including county of recording) set forth in the Movant's deed of trust is:
        see exhibit "2" to Baer Declaration

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

5. Type of property (*check all applicable boxes*):

a. ☐ Debtor's principal residence     b. ☐ Other residence

c. ☐ Multi-unit residential     d. ☐ Commercial

e. ☐ Industrial     f. ☐ Vacant land

g. ☒ Other (*specify*): Movant contends Debtor had no interest in this house

6. Nature of the Debtor's interest in the Property:

a. ☐ Sole owner

b. ☐ Co-owner(s) (*specify*):

c. ☐ Lienholder (*specify*):

d. ☐ Other (*specify*):

e. ☒ The Debtor ☐ did ☒ did not list the Property in the Debtor's schedules.

f. ☐ The Debtor acquired the interest in the Property by ☐ grant deed ☐ quitclaim deed ☐ trust deed.

    The deed was recorded on (*date*) _____.   Movants contend Debtor did not have any interest in the property.

7. Movant holds a ☐ deed of trust ☐ judgment lien ☒ other (*specify*) _Foreclosure sale purchaser_____
that encumbers the Property.

a. ☐ A true and correct copy of the document as recorded is attached as Exhibit _____.

b. ☐ A true and correct copy of the promissory note or other document that evidences the Movant's claim is attached as Exhibit _____.

c. ☐ A true and correct copy of the assignment(s) transferring the beneficial interest under the note and deed of trust to Movant is attached as Exhibit _____.

8. Amount of Movant's claim with respect to the Property:

|  |  | PREPETITION | POSTPETITION | TOTAL |
|---|---|---|---|---|
| a. | Principal: | $ | $ | $ |
| b. | Accrued interest: | $ | $ | $ |
| c. | Late charges | $ | $ | $ |
| d. | Costs (attorney's fees, foreclosure fees, other costs): | $ | $ | $ |
| e. | Advances (property taxes, insurance): | $ | $ | $ |
| f. | Less suspense account or partial balance paid: | $[　　　　] | $[　　　　] | $[　　　　] |
| g. | TOTAL CLAIM as of (*date*): | $ | $ | $ |

h. ☐ Loan is all due and payable because it matured on (*date*) _____

9. Status of Movant's foreclosure actions relating to the Property (*fill the date or check the box confirming no such action has occurred*):

a. Notice of default recorded on (*date*) _2/14/14_____ or ☐ none recorded.

b. Notice of sale recorded on (*date*) _3/26/19_____ or ☐ none recorded.

c. Foreclosure sale originally scheduled for (*date*) _____ or ☐ none scheduled.

d. Foreclosure sale currently scheduled for (*date*) _____ or ☐ none scheduled.

e. Foreclosure sale already held on (*date*) _12/18/19_____ or ☐ none held.

f. Trustee's deed upon sale already recorded on (*date*) _____ or ☒ none recorded.

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

10. Attached (*optional*) as Exhibit _____ is a true and correct copy of a POSTPETITION statement of account that accurately reflects the dates and amounts of all charges assessed to and payments made by the Debtor since the bankruptcy petition date.

11. ☐ (*chapter 7 and 11 cases only*) Status of Movant's loan:    Foreclosure sale purchaser, not lender

   a. Amount of current monthly payment as of the date of this declaration: $_____ for the month of _____ 20___.

   b. Number of payments that have come due and were not made: _____. Total amount: $_____

   c. Future payments due by time of anticipated hearing date (*if applicable*):

      An additional payment of $_____ will come due on (*date*) _____, and on the _____ day of each month thereafter. If the payment is not received within _____ days of said due date, a late charge of $_____ will be charged to the loan.

   d. The fair market value of the Property is $_____, established by:

      (1) ☐ An appraiser's declaration with appraisal is attached as Exhibit _____.

      (2) ☐ A real estate broker or other expert's declaration regarding value is attached as Exhibit _____.

      (3) ☐ A true and correct copy of relevant portion(s) of the Debtor's schedules is attached as Exhibit _____.

      (4) ☐ Other (*specify*):

   **e. Calculation of equity/equity cushion in Property:**

      Based upon ☐ a preliminary title report ☐ the Debtor's admissions in the schedules filed in this case, the Property is subject to the following deed(s) of trust or lien(s) in the amounts specified securing the debt against the Property:

| | Name of Holder | Amount as Scheduled by Debtor (*if any*) | Amount known to Declarant and Source |
|---|---|---|---|
| 1st deed of trust: | | $ | $ |
| 2nd deed of trust: | | $ | $ |
| 3rd deed of trust: | | $ | $ |
| Judgment liens: | | $ | $ |
| Taxes: | | $ | $ |
| Other: | | $ | $ |
| **TOTAL DEBT:** $ | | | |

   f. Evidence establishing the existence of these deed(s) of trust and lien(s) is attached as Exhibit _____ and consists of:

      (1) ☐ Preliminary title report.

      (2) ☐ Relevant portions of the Debtor's schedules.

      (3) ☐ Other (*specify*):

   g. ☐ **11 U.S.C. § 362(d)(1) - Equity Cushion:**
      I calculate that the value of the "equity cushion" in the Property exceeding Movant's debt and any lien(s) senior to Movant's debt is $ 0_____ and is 0_____% of the fair market value of the Property.

   h. ☐ **11 U.S.C. § 362(d)(2)(A) - Equity:**
      By subtracting the total amount of all liens on the Property from the value of the Property as set forth in Paragraph 11(e) above, I calculate that the Debtor's equity in the Property is $ 0_____.

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2017                                        Page 8                         F 4001-1.RFS.RP.MOTION

Page 8

i. ☐ Estimated costs of sale: $_____ (estimate based upon _____% of estimated gross sales price)

j. ☐ The fair market value of the Property is declining because:

12. ☐ *(Chapter 12 and 13 cases only)* Status of Movant's loan and other bankruptcy case information:

a. A 341(a) meeting of creditors is currently scheduled for *(or concluded on)* the following date: _____.
A plan confirmation hearing currently scheduled for (or concluded on) the following date:_____.
A plan was confirmed on the following date *(if applicable)*: _____.

b. Postpetition preconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

| Number of Payments | Number of Late Charges | Amount of Each Payment or Late Charge | Total |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

(See attachment for additional breakdown of information attached as Exhibit _____.)

c. Postpetition postconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

| Number of Payments | Number of Late Charges | Amount of each Payment or Late Charge | Total |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

d. Postpetition advances or other charges due but unpaid:                    $
*(For details of type and amount, see Exhibit _____)*

e. Attorneys' fees and costs:                                                        $
*(For details of type and amount, see Exhibit _____)*

f. Less suspense account or partial paid balance:                          $[                    ]

       TOTAL POSTPETITION DELINQUENCY:                          $

g. Future payments due by time of anticipated hearing date *(if applicable)*: _____.
An additional payment of $_____ will come due on _____, and on
the _____ day of each month thereafter. If the payment is not received by the _____ day of the month, a late charge of $_____ will be charged to the loan.

h. Amount and date of the last 3 postpetition payments received from the Debtor in good funds, regardless of how applied (if applicable):
$_____ received on *(date)* _____
$_____ received on *(date)* _____
$_____ received on *(date)* _____

i. ☐ The entire claim is provided for in the chapter 12 or 13 plan and postpetition plan payments are delinquent.
A plan payment history is attached as Exhibit _____. See attached declaration(s) of chapter 12 trustee or 13 trustee regarding receipt of payments under the plan *(attach LBR form F 4001-1.DEC.AGENT.TRUSTEE)*.

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                                     Page 9                          **F 4001-1.RFS.RP.MOTION**

Page 9

13. ☐ Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with the Debtor.

14. ☐ The court determined on (*date*) _____ that the Property qualifies as "single asset real estate" as defined in 11 U.S.C. § 101(51B). More than 90 days have passed since the filing of the bankruptcy petition; more than 30 days have passed since the court determined that the Property qualifies as single asset real estate; the Debtor has not filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or the Debtor has not commenced monthly payments to Movant as required by 11 U.S.C. § 362(d)(3).

15. ☐ The Debtor's intent is to surrender the Property. A true and correct copy of the Debtor's statement of intentions is attached as Exhibit _____.

16. ☐ Movant regained possession of the Property on (*date*) _____, which is ☐ prepetition ☐ postpetition.

17. ☒ The bankruptcy case was filed in bad faith:

   only one creditor listed

   a. ☒ Movant is the only creditor or one of few creditors listed in the Debtor's case commencement documents.

   b. ☐ Other bankruptcy cases have been filed in which an interest in the Property was asserted.

   c. ☒ The Debtor filed only a few case commencement documents. Schedules and a statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

   d. ☒ Other (*specify*):
      see Peter Baer declaration re timing of filing

18. ☐ The filing of the bankruptcy petition was part of a scheme to delay, hinder, or defraud creditors that involved:

   a. ☐ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval. See attached continuation page for facts establishing the scheme.

   b. ☐ Multiple bankruptcy cases affecting the Property include:

      1. Case name: _____
         Chapter: _____    Case number: _____
         Date dismissed: _____    Date discharged: _____    Date filed: _____
         Relief from stay regarding the Property ☐ was ☒ was not granted.

      2. Case name: _____
         Chapter: _____    Case number: _____
         Date dismissed: _____    Date discharged: _____    Date filed: _____
         Relief from stay regarding the Property ☐ was ☒ was not granted.

      3. Case name: _____
         Chapter: _____    Case number: _____
         Date dismissed: _____    Date discharged: _____    Date filed: _____
         Relief from stay regarding the Property ☐ was ☒ was not granted.

   ☐ See attached continuation page for information about other bankruptcy cases affecting the Property.

   ☐ See attached continuation page for facts establishing that the multiple bankruptcy cases were part of a scheme to delay, hinder, or defraud creditors.
   S

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

19. ☒ Enforcement actions taken after the bankruptcy petition was filed are specified in the attached supplemental declaration(s).

a. ☒ These actions were taken before Movant knew the bankruptcy petition had been filed, and Movant would have been entitled to relief from stay to proceed with these actions.

b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____.

c. ☐ For other facts justifying annulment, see attached continuation page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 1/9/2020 | PETER BAER | |
|----------|-----------|----|
| Date | Printed name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2017                          Page 11                          F 4001-1.RFS.RP.MOTION

Page 11

## 2:19-bk-24639-VZ – CLAIRE M. ALMEDA - CHAPTER 13

## APPLICABLE LAW

A bankruptcy Court has "discretion to grant retroactive relief from the automatic say." *In re AVI, Inc.,* 289 B.R. 721, 731 (9th Cir. BAP 2008). Extraordinary or extreme circumstances **are not required** and it is merely a balancing test. *In re Fjeldsted*, 293 B.R. 12, 23 (9th Cir. BAP (2003).

"Whether to grant retroactive relief from the automatic stay under §362(d) is a decision committed to the discretion of the bankruptcy court. *Nat'l Envtl. Waste,* 129 F.3ed at 1054. In *Nat'l Envtl. Waste*, the Ninth Circuit adopted a balancing of equities approach for analyzing a request for retroactive stay relief, and identified two factors to be considered by the bankruptcy court: (1) whether the creditor was aware of the bankruptcy petition; and (2) whether the debtor engaged in unreasonable or inequitable conduct, or prejudice would result to the creditor. *Id.* At 1055-56. In *In re Fjeldsted, 293 B.R. 12, 24-25 (9th Cir. BAP 2003)*, following *Nat'l Envtl. Waste,* we approved consideration off additional factors by the bankruptcy court, including: the number of filings; the extent of any prejudice , including to a bona fide purchaser; the debtor's overall good faith; the debtor's compliance with the Code; how quickly the creditor moved for annulment; and how quickly the debtor moved to set aside the sale. But because a mechanistic application of 'factors' is inappropriate in making the determination of whether to annul the stay, in *Fjeldsted*, we observed that: "Mindful that such lists [of factors] are capable of being misconstrued as inviting arithmetic reasoning,

we emphasize that these items are merely a framework for analysis and not a scorecard. **In any given case, one factor may so outweigh the others as to be dispositive."** *In re Williams,* 323 B.R. 691, 700 (9th Cir. BAP 2005) (Emphasis in original). Extraordinary circumstances need not be shown. *In re Fjeldsted*, 293 B.R. 12, 22-23 (9th Cir. BAP 2003).

A foreclosure sale purchaser has standing to seek the relief requested. *In re Funes*, 2014 WL 6896030 (C.D. Cal. 2014) See also *In re Cruz*, 516 B.R. 594, 602-03 (9th Cir. BAP 2014). Factors the Court considers in deciding if the case was filed in bad faith include whether there was only a single creditor; the debtor made no efforts to repay his debts, the debtor's overly utilizing the protections of the Code to the unconscionable detriment of creditors . *In re O'Brien*, 328 B,R, 669, 675 (Bankr. W.D.N.Y. 2005) *See also In re Hammonds*, 139 B.R. 535, 542 (Bankr. D. Colo. 1992), *In re Spagnolia*, 199 B.R. 362, 365 (Bankr. W.D. Ky. 1995).

**INTRODUCTION**

**THIS IS THE DEBTOR'S FIFTH (5TH) BANKRUPTCY CASE. SHE FILED ON DECEMBER 16, 2019. THE FORECLOSURE SALE OF THE PROPERTY AT 7322 W. 90TH ST, TOOK PLACE ON DECEMBER 18, 2019. DEBTOR WAS NOT ON TITLE AND HAD NO DOCUMENTS INDICATING SHE WAS ON TITLE. NEVERTHELESS, POST-SALE, SHE SENT THE TRUSTEE A LETTER CLAIMING HER BANKRUPTCY STAYED THE SALE. THE TRUSTEE, OUT OF AN ABUNDANCE OF CAUTION, HAS REFUSED TO**

2

**ISSUE THE TRUSTEE'S DEED UPON SALE ("TDUS") UNTIL THE
FORECLOSURE SALE BUYER RECEIVES RETROACTIVE RELIEF FROM
THE STAY.  THE BUYER THUS HAS FILED THIS MOTION SO THE TDUS
CAN BE ISSUED.**

### I.    STATEMENT OF FACTS

1.    Movants, Magnum Property Investments, LLC ("Magnum") through its bidding agent, Strategic Acquisitions, Inc. ("Strategic") (Collectively "Movants") was the high bidder at the foreclosure sale of the real property at 7322 W. 90th St., Los Angeles, CA 90045 – APN 4119-017-004 (the "Property"), and paid $965,290.01 for it at the foreclosure sale on December 18, 2019.  (Purchase Receipt Exhibit "1").

2.    The foreclosure sale was of the deed of trust recorded on November 29, 2005 by Rashaan J. Washington who had borrowed $623,200. (Trust Deed Exhibit "2"). The recorded documents indicate that the current owner of the property as of the date of the foreclosure sale were Eugene Mallo, Connie Mallo and Leopldo Mallo.  (Exhibit "3").

3.    The lender recorded a notice of default and election to sell under deed of trust on February 14, 2014 as instrument number 20140162306 showing a default of $356,369.95 as of February 6, 2014 (the "NOD" Ex. "4").

4.    When that default was not cured, the lender recorded a notice of trustee's sale on March 26, 2019 as instrument number 20190260657 (the "NOS" Ex. "5").

3

5.      Debtor, Claire M. Almeda, filed this case on December 16, 2019, by a face page filing after having filed 4 prior bankruptcy cases. (Docket Exhibit "6").

6.      A letter was then sent to the foreclosure trustee claiming that Almeda's bankruptcy case stayed the sale.  The letter purported to attach a quitclaim deed but none was attached.  (Exhibit "7").  Further, a review of title chain did not disclose Almeda's name ever appearing on title at any time since Rashaan acquired title in 2005, from Robert and Linda Sturdevant.  (Exhibit "8").

7.      The Debtor's face page failing was not completed, and her case was dismissed by the Court by its order on January 3, 2020. (Exhibit "9").

8.      When the foreclosure sale took place on December 18, 2019, there was no indication at the sale that the bankruptcy prohibited the sale by the foreclosing trustee and Magnum/Strategic were unaware of the bankruptcy filing.  The general procedure of foreclosure trustees is that sales are not conducted if a bankruptcy is timely filed and actually prohibits the sale.   Here, of course, since the Debtor was not of record, and is still believed to never have had an interest in the Property, her filing did not stop the sale.

9.      The foreclosure trustee will not issue the Trustee's Deed Upon Sale until the automatic stay is retroactively annulled.

10.     Magnum/Strategic purchased the Property at the foreclosure sale, in good faith, without knowledge of this bankruptcy filing by the Debtor and no knowledge of any automatic stay.

11.     Based on the bad faith inequitable conduct described above, the Court should grant retroactive relief and annulment of the automatic stay to validate the foreclosure sale on December 18, 2019, that took place for the Property and permit the trustee to issue the trustee's deed upon sale and then movants may use their State Court remedies to evict the inhabitants of the Property.

HARRIS L. COHEN, A PROF. CORP.

By: _____
Harris L. Cohen, Esq., Attorney for Movants

## DECLARATION OF PETER BAER

I, Peter Baer, hereby declare and state:

I am over the age of 18 and have personal knowledge as to all facts set forth herein and if called upon to testify thereto, I could and would competently do so.

1.     I am the president of the manager of Magnum Property Investments, LLC ("Magnum") which is Strategic Acquisitions, Inc. ("Strategic") (collectively Movants), the Movants with authority to file this motion.

2.     Magnum, through its bidding agent, Strategic (Collectively "Movants") was the high bidder at the foreclosure sale of the real property at 7322 W. 90th St., Los Angeles, CA 90045 – APN 4119-017-004 (the "Property"), and paid $965,290.01 for it at the foreclosure sale on December 18, 2019.  (A true and correct copy of the Purchase Receipt is attached hereto as Exhibit "1").

3.    The foreclosure sale was of the deed of trust recorded on November 29, 2005 by Rashaan J. Washington ("Washington") who had borrowed $623,200. (A true and correct copy of the Trust Deed is attached hereto as Exhibit "2").   The recorded documents indicate that the current owner of the property as of the date of the foreclosure sale were Eugene Mallo, Connie Mallo and Leopldo Mallo.  (A true and correct copy of the quitclaim deed is attached hereto as Exhibit "3").

4.    The lender recorded a notice of default and election to sell under deed of trust on February 14, 2014 as instrument number 20140162306 showing a default of $356,369.95 as of February 6, 2014 (the "NOD").  (A true and correct copy of the NOD is attached hereto as Exhibit "4").

5.    When that default was not cured, the lender recorded a notice of trustee's sale on March 26, 2019 as instrument number 20190260657 (the "NOS"). (A true and correct copy of the NOS is attached hereto as Exhibit "5").

6.    Debtor, Claire M. Almeda, filed this case on December 16, 2019, by a face page filing after having filed 4 prior bankruptcy cases. (A true and correct copy of the Debtor's case Docket for this case is attached hereto as Exhibit "6").

7.    A letter was then sent to the foreclosure trustee claiming that Almeda's bankruptcy case stayed the sale.  The letter purported to attach a quitclaim deed but none was attached.  (A true and correct copy of the letter the trustee provided to us that was received after the sale is attached hereto as Exhibit "7").  Although the letter references a deed, none was attached.  Further, a review of title chain did not disclose Almeda's name

ever appearing on title at any time since Washington acquired title in 2005, from Robert and Linda Sturdevant.  (A true and correct copy of the printout from titlepoint from Fidelity National Title showing the chain of title from and after Washington acquiring title is attached hereto as Exhibit "8").

8.    The Debtor's face page failing was not completed, and her case was dismissed by the Court by its order on January 3, 2020.  (A true and correct copy of the dismissal order is attached hereto as Exhibit "9").

9.    When the foreclosure sale took place on December 18, 2019, there was no indication at the sale that the bankruptcy prohibited the sale by the foreclosing trustee and Magnum/Strategic were unaware of the bankruptcy filing.  The general procedure of foreclosure trustees is that sales are not conducted if a bankruptcy is timely filed and actually prohibits the sale.  I know this based on my 20+ years of attending and participating in foreclosure sales in Los Angeles and Southern California generally that are routinely continued if there is a timely bankruptcy filing, timely notice and the automatic stay is in effect.  Here, of course, since the Debtor was not of record, and is still believed to never have had an interest in the Property, her filing did not stop the sale.

10.    Magnum/Strategic purchased the Property at the foreclosure sale, in good faith, without knowledge of this bankruptcy filing by the Debtor and no knowledge of any automatic stay.   I was in telephonic contact with our bidder at the sale and in communications concerning bidding there was no announcement at the sale of any bankruptcy or any reason the sale could or should not go forward.

11.     Based on the bad faith inequitable conduct described above, the Court should grant retroactive relief and annulment of the automatic stay to validate the foreclosure sale on December 18, 2019, that took place for the Property and permit the trustee to issue the trustee's deed upon sale to Magnum so that it can then use its State Court remedies to evict the inhabitants of the Property.

12.     The foreclosure trustee will not issue the Trustee's Deed Upon Sale until the automatic stay is retroactively annulled.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct. Executed at Agoura Hills, California on January 9, 2020.


_____
Peter Baer

EXHIBIT "1"

## RECEIPT OF FUNDS

Number of Witness: 1:08
Time Sold: 14

Sale Date: 12/18/19

Client #: _____

T.S. #: 2013-04222-CA

Property Address: 7322 W. 90th St, Los Angeles

Trustee: Western Progressive LLC

Trustee Address: 1000 Abernathy Rd NE Bldg 400 #200

Trustee Phone: Atlanta, GA 30328 (866) 960-8299

### FUNDS RECEIVED

| Check Number | Bank Name | Amount |
|---|---|---|
| 4654517264 / 4654517265 | US BANK | $ 100,000 / 100,000 |
| 4654517262 / 4654517263 | US BANK | $ 100,000 / 100,000 |
| 4654517252 / 4654517253 | US BANK | $ 70,000 / 70,000 |
| 4654517254 / 4654517255 | US BANK | $ 70,000 / 70,000 |
| 4654517256 / 4654517257 | US BANK | $ 70,000 / 70,000 |
| 4654517273 / 4654517266 | US BANK | $ 50,000 / 50,000 |
| 4654517267 | US BANK | 50,000 |

OPENING BID $ 965,290.00

TOTAL RECEIVED $ 970,000

LESS REQUIRED $ 965,290.01

REFUND $ 4,709.99

### REFUND INFORMATION

Refund Check Payable to: Strategic Acquisitions LLC

Refund Mailing Address (No PO Box): 27489 Agoura Rd
Agoura Hills, CA 91301

### RECORDING INFORMATION

Vesting- Record Title as Shown: Magnum Property Investments LLC, A

Mail Deed to (No PO Box): Delaware Limited Liability Company, or Nominee
— Strategic Acq. Inc

### BUYERS INFORMATION

Buyers Name: Michael Perez    Phone: (818) 769-7880    Email: _____

Representative Name: _____    DL#: _____

Address: 27489 Agoura Rd  Agoura Hills, CA 91301

### CHECKLIST

1. Are all checks properly endorsed?  (Y)  N
2. Verified refund address is not a PO Box?  (Y)  N
3. Entire receipt filled out- no blanks?  (Y)  N
4. Checked Power of attorney with office?  (Y)  N

### DISCLAIMER

Buyer or Buyer's Agent's signature below indicates that the above information is true and correct and buyer agrees to each term contained in this document. **IMPOTANT NOTE:** Buyer and Buyer's Agent agree that neither Trustee nor its Agents make any express or implied warranties with respect to the real property being purchased. Purchaser agrees that trustee/auctioneer reserves the right to cancel or not issue the trustee's deed and refund the full purchaser price in the event there has been a bankruptcy filed, collusion between bidders and/or others, litigation that calls into question the validity of the sale, or other defects that suggest that the sale should be void, *including* mistakes as to announced opening bid or beneficiary credit bid amounts. *Purchaser agrees that damages are limited to refund of the full purchase price.* Trustee and its Agents make no oral or written representation regarding the condition of the real property, the age of improvements, the size and square footage of the parcel or building, the location of property lines, or anything else. Buyer and Buyer's Agent acknowledge that it has not relied upon any representation by Trustee or Trustee's Agents. Buyer and Buyer's agent agree that the real property is being sold on an "AS IS" basis.

Signature of Buyer: _____

Name: Michael Perez

Date: 12-18-19

Auctioneer Signature: _____

Name: DOUG BECKSTROM

Date: 12/18/19

**SDS**
SUPERIOR DEFAULT SERVICES, INC.

EXHIBIT "2"

**This page is part of your document - DO NOT DISCARD**

**05 2891198**

RECORDED/FILED IN OFFICIAL RECORDS
RECORDER'S OFFICE
LOS ANGELES COUNTY
CALIFORNIA
**11/29/05 AT 08:00am**

**TITLE(S) :**



L E A D    S H E E T

| FEE | | D.T.T. |
|---|---|---|
| |  FEE $ 61 SS  19<br>DAF $ 2<br>C-20 | |

CODE
20

CODE
19

CODE
9____

NOTIFICATION SENT-$4

**Assessor's Identification Number (AIN)**
**To be completed by Examiner OR Title Company in black ink.**    **Number of AIN's Shown**

**THIS FORM IS NOT TO BE DUPLICATED**

Fidelity National Title Company

11/29/15

Recording Requested By:
**Argent Mortgage Company, LLC**

Return To:
**Argent Mortgage Company, LLC**
**P.O. Box 5047**
**Rolling Meadows, IL 60008**

**05 2891198**

Prepared By:**Argent Mortgage Company, LLC**
**Sadat Kham**
**One City Boulevard West**
**Orange, CA 92868**

———————————[Space Above This Line For Recording Data]———————————

# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated **November 17, 2005**
together with all Riders to this document.
**(B) "Borrower"** is **RASHAAN J. WASHINGTON, A Single Man**

Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is **Argent Mortgage Company, LLC**

Lender is a **Limited Liability Company**
organized and existing under the laws of **Delaware**

**0090653478 - 9501**

**CALIFORNIA**-Single Family-Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**      **Form 3005  1/01**

VMP ®-6(CA) (0005)
Page 1 of 15      Initials:

**11/17/2005 12:07:53 PM**

VMP MORTGAGE FORMS - (800)521-729

d06-01ca (05/2005)Rev.01

Lender's address is 3 Park Plaza 10th Floor  Irvine, CA 92614

Lender is the beneficiary under this Security Instrument.
**(D) "Trustee"** is Town and Country Title Services, Inc.

**(E) "Note"** means the promissory note signed by Borrower and dated November 17, 2005
The Note states that Borrower owes Lender six hundred twenty-three thousand two
hundred and 00/100                                                    Dollars
(U.S. $ 623,200.00        ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than December 1, 2035
**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the
Property."
**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [x] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
**(L) "Escrow Items"** means those items that are described in Section 3.
**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard

0090652787 9501
Initials:

VMP®-6(CA) (0005)          Page 2 of 15    11/17/2005 12/07:53    Form 3005  1/01

D06-02CA (05/2005)Rev.01

05 2891198

11/29/15

4

to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

County            of            LOS ANGELES            :

[Type of Recording Jurisdiction]            [Name of Recording Jurisdiction]

*LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF:*



Parcel ID Number: 4119-017-004            which currently has the address of
7322 WEST 90TH STREET            [Street]
LOS ANGELES            [City], California 90045            [Zip Code]
("Property Address"):

   TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

   BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

   THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

   UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

   **1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.

0090653079 9501

Initials:

VMP®-6(CA) (0005)            Page 3 of 15            11/17/2005 12:07:53    Form 3005    1/01

(05/2005)Rev.01            **05 2891198**

Non-Order Search
Doc: CALOSA:2005 02891198            Page 4 of 20            Requested By: fntmclall  Printed: 1/3/2020 11:36 AM

5

currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply *such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note* immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives *Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's* obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

0090658978-9501
Initials:

VMP®-6(CA) (0005)    Page 4 of 15    11/17/2005 12/07:53    Form 3005    1/01

D06-04CA (05/2005)Rev.01    **05 2891198**

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. *Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9.* If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

00906  - 9501
Initials:

VMP -6(CA) (0005)                    Page 5 of 15   11/17/2005 12:07:53    Form 3005   1/01

D06-05CA (05/2005)Rev.01            05 2891198

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

0090 6 9 0 - 9501

Initials:

VMP -6(CA) (9906).02                     Page 6 of 15        11/17/2005  12:07:53      Form 3005   3/99

D06-06CA (05/2005)Rev.01                   **05  2891198**

Non-Order Search
Doc: CALOSA:2005 02891198

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

00906 9501
Initials:

VMP®-6(CA) (0005)                    Page 7 of 15    11/17/2005 12/07:53    Form 3005 1/01

D06-07CA (05/2005)Rev.01                        05 2891198

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

0090663178 - 9501

Initials:

VMP -6(CA) (0005)   Page 8 of 15   11/17/2005 12:07:53   Form 3005   1/01

D06-08CA (05/2005)Rev.01   05 2891198

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

00906588789501
Initials:

(VMP) -6(CA) (0005)

Page 9 of 15    11/17/2005 12/07:53    Form 3005    1/01

D06-09CA (05/2005)Rev.01    **05 2891198**

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

    **13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

    Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

    **14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

    If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

    **15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

0090683478- 9501
Initials:

-6(CA) (0005)    Page 10 of 15    11/17/2005 12/07:53    Form 3005    1/01

D06-10CA (05/2005)Rev.01    **05  2891198**

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

0090617478  9501

Initials: _____

VMP-6(CA) (0005)        Page 11 of 15        11/17/2005 12:07:53        Form 3005  1/01

D06-11CA (05/2005)Rev.01        05 2891198

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

0090658478/9501
Initials:

-6(CA) (0005)          Page 12 of 15    11/17/2005 12:07:53    Form 3005   1/01

D06-12CA (05/2005)Rev.01              05 2891198

14

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

0090 9501
Initials:

VMP-6(CA) (0005)    Page 13 of 15    11/17/2005 12:07:53    Form 3005    1/01

D06-13CA (05/2005)Rev.01    05 2891198

11/29/15

15

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____    _____ (Seal)
                                    RASHAAN J. WASHINGTON        -Borrower

_____    _____ (Seal)
                                                                 -Borrower

_____ (Seal)    _____ (Seal)
                       -Borrower                                 -Borrower

_____ (Seal)    _____ (Seal)
                       -Borrower                                 -Borrower

_____ (Seal)    _____ (Seal)
                       -Borrower                                 -Borrower

0090653478 - 9501

VMP -6(CA) (0005)          Page 14 of 15    11/17/2005 12:07:53 Form 3005  1/01

(05/2005)Rev.01                  05 2891198

11/29/15

16

**State of California**

**County of** Los Angeles } ss:

On ___Nov. 17, 2005___ before me, ___Suzanne Lawrence___
Day/Month/Year                                         Notary Public

personally appeared ___Rashaan J Washington___

_____

_____

_____

personally known to me (or proven to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument

Witness my hand and official seal.

___Suzanne Lawrence___                    (Seal)
Notary Public





Page 15 of 15          0090653478 - 9501

11/17/2005 12:07:53 PM

**05 2891198**

400-15CA (05/2005)Rev.01

Order No. 19436941

## EXHIBIT "ONE"

Lot 175, of Tract No. 14439, in the City of Los Angeles, County of Los Angeles, State of California, as per map recorded in Book 378 Page(s) 37 to 40 inclusive of Maps, in the office of the County Recorder of said county.

Assessor's Parcel No: 4119-017-004

05 2891198

## ADJUSTABLE RATE RIDER
**(LIBOR Six-Month-Index (As Published in the Wall Street Journal)- Rate Caps)**

THIS ADJUSTABLE RATE RIDER is made this 17th day of November , 2005   and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to Argent Mortgage Company, LLC (the "Lender") of the same date and covering the property described in the Security Instrument and located at:

7322 WEST 90TH STREET, LOS ANGELES, CA  90045
[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS**. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A.   INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial interest rate of  **6.650** %. The Note provides for changes in the interest rate and the monthly payments, as follows:

**4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES**
   **(A) Change Dates**
The interest rate I will pay may change on the first day of  December, 2007  , and on that day every sixth  month thereafter. Each date on which my interest rate could change is called a "Change Date."

   **(B) The Index**
Beginning with the first Change Date, my interest rate will be based on an Index.   The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in the Wall Street Journal.  The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

   If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information.  The Note Holder will give me notice of this choice.

Initials

Loan Number:  0090653478 - 9501

610-1 (Rev 1/01)                     Page 1 of 3

11/17/2005 12:07:53 PM

05  2891198

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **six** percentage points ( **6.000 %**) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

For Change Dates during the Interest Only period (the first 60 months of the term) the Note Holder will then determine the amount of the monthly payment that would be sufficient to pay only the interest which accrues on the unpaid principal of my loan at my new interest rate. For Change Dates after the Interest Only period ends the Note Holder will determine the amount of the monthly payment that would be sufficient to repay the unpaid principal balance that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The results of this calculation will be the new amount of monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **8.650% or less than 6.650%.** Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than One( **1.000 %**) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than 12.650)% or less than 6.650)%.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include *information required by law to be given me and also the title and telephone number of a person* who will answer any question I may have regarding the notice.

## B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Section 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

Initials

Loan Number:  0090653478 - 9501

610-2 (11/2005) Rev. 1                    Page 2 of 3

05  2891198                    11/17/2005 12:07:53 PM

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing. If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)    _____ (Seal)
Borrower RASHAAN J WASHINGTON                Borrower


_____ (Seal)    _____ (Seal)
Borrower                                     Borrower


Loan Number:  0090653478 - 9501


610-3 (Rev 1/01)                 Page 3 of 3
                                                11/17/2005 12:07:53 PM

05 2891198

EXHIBIT "3"



**This page is part of your document - DO NOT DISCARD**



# 20100787421



Pages:
0006

**Recorded/Filed in Official Records**
Recorder's Office, Los Angeles County,
California

**06/09/10 AT 10:46AM**

| | |
|---|---|
| FEES: | 31.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 31.00 |





**L E A D S H E E T**



201006090620011

00002486305



002721741

**SEQ:**
**02**

DAR - Counter (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**



RECORDING REQUESTED BY



06/09/2010

*20100787421*

WHEN RECORDED MAIL TO:

S.B.G.
322 Culver Blvd., #331
Los Angeles, CA 90293

SPACE ABOVE THIS LINE RESERVED FOR RECORDERS USE

# Quitclaim Deed

*Documentary Transfer Tax ∅ Gift.*
*___ Computed on Full Value of property conveyed*
*___ or Completed on Full Value Less*
*Liens and*
*Encumbrances Remaining at time of sale*
*Signiture of declarent or agent determining Taxes*

Recording requested by: _____ | Space above reserved for use by Recorder's Office

When recorded, mail to: | Document prepared by:

Name: *S.B.G.* | Name *G.M.*

Address: *322 Culver Blvd #331* | Address *322. Culver Blvd #331*

City/State/Zip: *L.A. CA. 90293* | City/State/Zip: *L.A. CA. 90293.*

Property Tax Parcel/Account Number: *4119 - 017 - 004*
*This is a bonafide Gift and grantor received Nothing in return per 11911.*

# Quitclaim Deed

This Quitclaim Deed is made on *June 8. 2010* _____, between
*Eugene Mallo* . Grantor, of *7322 west 90th st.*
_____, City of *los Angeles* _____, State of *California,* ,
and *Eugene Mallo & Conne Mallo + Leopoldo Mallo*, Grantee, of *7322 west 90th st.*
_____, City of *los Angeles* _____, State of *California.* .

For valuable consideration, the Grantor hereby quitclaims and transfers all right, title, and interest held by

the Grantor in the following described real estate and improvements to the Grantee, and his or her heirs

and assigns, to have and hold forever, located at _____

_____, City of _____, State of _____ :

*" See Attached Exhibit "A" "*

Subject to all easements, rights of way, protective covenants, and mineral reservations of record, if any.

Taxes for the tax year of _____ shall be prorated between the Grantor and Grantee as of the date of

recording of this deed.

✯NOVA Quitclaim Deed Pg 1 (07-09)

Dated: _June 8· 2010_____

_Eugene & Nello_____
Signature of Grantor

_Eugene E Nello,_____
Name of Grantor


_____    _____
Signature of Witness #1    Printed Name of Witness #1


_____    _____
Signature of Witness #2    Printed Name of Witness #2


State of _____ County of _____
On _____ , the Grantor, _____ ,
personally came before me and, being duly sworn, did state and prove that he/she is the person described
in the above document and that he/she signed the above document in my presence.

_See CA All-Purpose Ack. Attachment_
Notary Signature


Notary Public,
In and for the County of _____ State of _____
My commission expires: _____    Seal


Send all tax statements to Grantee.

                                        ★NOVA Quitclaim Deed Pg.2 (07-09)

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of _Los Angeles_ }

On _June 8, 2010_ before me, _Benjamin Herrera Notary Public_,
　Date　　　　　　　　　　　　　　Here Insert Name and Title of the Officer

personally appeared _Eugene Mallo_
　　　　　　　　　　　　　　　　　Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

```
BENJAMIN HERRERA
Commission # 1700709
Notary Public - California
Los Angeles County
My Comm. Expires Oct 24, 2010
```

Place Notary Seal Above

Signature: _____
　　　　　　　　Signature of Notary Public

## OPTIONAL

*Though the information below is not required by law, it may prove valuable to persons relying on the document
and could prevent fraudulent removal and reattachment of this form to another document*

**Description of Attached Document**

Title or Type of Document: _Quit Claim Deed_

Document Date _June 8, 2010_　　　　Number of Pages: _3_

Signer(s) Other Than Named Above _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _Eugene Mallo_

☐ Corporate Officer — Title(s) _____
☐ Individual
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☒ Other _Grantor_

Signer Is Representing _____

RIGHT THUMBPRINT
OF SIGNER
Top of thumb here

Signer's Name: _____

☐ Corporate Officer — Title(s) _____
☐ Individual
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other. _____

Signer Is Representing _____

RIGHT THUMBPRINT
OF SIGNER
Top of thumb here

© 2009 National Notary Association • NationalNotary org • 1-800-US NOTARY (1-800-876-6827)　　　　　Item #5907

*A.*

## EXHIBIT "ONE"

Lot 175, of Tract No 14439, in the City of Los Angeles, County of Los Angeles, State of California, as per map recorded in Book 378 Page(s) 37 to 40 inclusive of Maps, in the office of the County Recorder of said county

Assessor's Parcel No 4119-017-004

# EXHIBIT "4"

 

**This page is part of your document - DO NOT DISCARD**

## 20140162306





**Pages:**
**0004**

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**02/14/14 AT 08:00AM**

| | | |
|---|---|---|
| FEES: | | 31.00 |
| TAXES: | | 0.00 |
| OTHER: | | 0.00 |
| PAID: | | 31.00 |





**L E A D S H E E T**



201402142950002

00008866334



006038545

**SEQ:**
**01**

**ERDS - 8:00AM**



**THIS FORM IS NOT TO BE DUPLICATED**



E12

E534011

RECORDING REQUESTED BY:

WHEN RECORDED MAIL TO:

Western Progressive, LLC

2002 Summit Blvd, Suite 600
Atlanta, GA 30319

| Loan No.: 7143216633 | TS No. 2013-04222-CA |
| | APN No.:4119-017-004 |

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER
## DEED OF TRUST

**PURSUANT TO CIVIL CODE § 2923.3(a), THE SUMMARY OF INFORMATION REFERRED TO BELOW IS NOT ATTACHED TO THE RECORDED COPY OF THIS DOCUMENT BUT ONLY TO THE COPIES PROVIDED TO THE TRUSTOR.**

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACION DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

### IMPORTANT NOTICE
**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION**, and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property.  No sale date may be set until approximately 90 days from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is **356,369.95 as of 02/06/2014, and** will increase until your account becomes current.  While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage.  If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing.  In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Loan No.: 7143216633

TS No. 2013-04222-CA

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing

prior to the time the notice of sale is posted (which may not be earlier than three months after this notice of default is recorded) to, among other things. (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

**To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:**

**Ocwen Loan Servicing, LLC Deutsche Bank National Trust Company, as Trustee for Argent Securities Inc., Asset-Backed Pass-Through Certificates, Series 2006-W1by its Attorney in Fact Homeward Residential, Inc.**

C/O Western Progressive, LLC

18377 Beach Blvd., Suite 210
Huntington Beach, California 92648
Beneficiary Phone: 877-596-8580

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure. Remember, **YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.**

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

NOTICE IS HEREBY GIVEN: That Western Progressive, LLC is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a Deed of Trust dated 11/17/2005, executed by, **Rashaan J. Washington, a Single Man**, as Trustor, to secure certain obligations in favor of Argent Mortgage Company, LLC, A Limited Liability Company, recorded 11/29/2005 , as Instrument No. **05 2891198**, in Book --- , Page --- , of Official Records in the Office of the Recorder of **Los Angeles County, California** describing land therein as: **As more particularly described on said Deed of Trust.**

Street Address or other common designation of real property:     **7322 West 90th Street, Los Angeles, CA 90045**

Loan No.: 7143216633

TS No. 2013-04222-CA

The subject obligation includes **ONE NOTE(S) FOR THE ORIGINAL** sum of 623,200.00.  A breach of, and default in,  the obligations for which such Deed of Trust is security has occurred in that payment has not been made of the following:

Installment of Principal and Interest plus impounds and/or advances which became due on 10/01/2007 plus late charges, and all subsequent installments of principal, interest, balloon payments, plus impounds and/or advances and late charges that become payable.
You are responsible to pay all payments and charges due under the terms and conditions of the loan documents which come due subsequent to the date of this notice, including, but not limited to, foreclosure trustee fees and costs, advances and late charges.
Furthermore, as a condition to bring your account in good standing, you must provide the undersigned with written proof that you are not in default on any senior encumbrance and provide proof of insurance.
Nothing in this notice of default should be construed as a waiver of any fees owing to the beneficiary under the deed of trust, pursuant to the terms and provisions of the loan documents.

That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for same, and has deposited with said duly appointed Trustee, such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

WE ARE ASSISTING THE BENEFICIARY TO COLLECT A DEBT AND ANY INFORMATION WE OBTAIN WILL BE USED FOR THE PURPOSE BY EITHER OURSELVES OR THE BENEFICIARY, WHETHER RECEIVED ORALLY OR IN WRITING.  YOU MAY DISPUTE THE DEBT OR A PORTION THEREOF WITHIN THIRTY (30) DAYS.  THEREAFTER WE WILL OBTAIN AND FORWARD TO YOU WRITTEN VERIFICATION THEREOF.  SHOULD YOU NOT DO
SO, THE DEBT WILL BE CONSIDERED VALID.  IN ADDITION, YOU MAY REQUEST THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR IF DIFFERENT FROM THE CURRENT ONE.

2.The mortgage servicer has exercised due diligence to contact the borrower pursuant to California Civil Code § 2923.55(f) to "assess the borrower's financial situation and explore options for the borrower to avoid foreclosure." Thirty (30) days, or more, have passed since these due diligence requirements were satisfied.

Dated: February 6, 2014

Western Progressive, LLC, as agent for beneficiary

Porsche Smiley (Trustee Sale Assistant)

# EXHIBIT "5"



**This page is part of your document - DO NOT DISCARD**

## 20190260657







**Pages: 0004**

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**03/26/19 AT 08:00AM**

| | |
|---|---|
| FEES: | 33.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 108.00 |





**L E A D S H E E T**



201903261010017

00016399459



009709211

**SEQ:
01**

SECURE - 8:00AM



**THIS FORM IS NOT TO BE DUPLICATED**

*E260020*

TSG1312-CA-1208400_b626

TS No.: 2013-04222-CA

RECORDING REQUESTED BY
**Premium Title of California**

AND WHEN RECORDED MAIL TO:
**Western Progressive, LLC**
**Northpark Town Center**
**1000 Abernathy Rd NE; Bldg 400, Suite 200**
**Atlanta, GA 30328**

---

SPACE ABOVE THIS LINE FOR RECORDER'S USE

T.S. No.: **2013-04222-CA**          A.P.N.:**4119-017-004**
Property Address: **7322 West 90th Street, Los Angeles, CA 90045**

## NOTICE OF TRUSTEE'S SALE

### PURSUANT TO CIVIL CODE § 2923.3(a) and (d), THE SUMMARY OF INFORMATION REFERRED TO BELOW IS NOT ATTACHED TO THE RECORDED COPY OF THIS DOCUMENT BUT ONLY TO THE COPIES PROVIDED TO THE TRUSTOR.

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED

注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

### IMPORTANT NOTICE TO PROPERTY OWNER:

YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 11/17/2005. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.

Trustor: **Rashaan J. Washington, a Single Man**
Duly Appointed Trustee: **Western Progressive, LLC**
Deed of Trust Recorded **11/29/2005** as Instrument No. **05 2891198** in book ---, page--- **and** of Official Records in the office of the Recorder of **Los Angeles** County, California,
Date of Sale: **05/09/2019** at **11:00 AM**
Place of Sale:     **BEHIND THE FOUNTAIN LOCATED IN CIVIC CENTER PLAZA, 400 CIVIC CENTER PLAZA, POMONA, CA 91766**

Estimated amount of unpaid balance, reasonably estimated costs and other charges: **$ 1,331,790.73**

TS No.: 2013-04222-CA

# NOTICE OF TRUSTEE'S SALE

THE TRUSTEE WILL SELL AT PUBLIC AUCTION TO HIGHEST BIDDER FOR CASH, CASHIER'S CHECK DRAWN ON A STATE OR NATIONAL BANK, A CHECK DRAWN BY A STATE OR FEDERAL CREDIT UNION, OR A CHECK DRAWN BY A STATE OR FEDERAL SAVINGS AND LOAN ASSOCIATION, A SAVINGS ASSOCIATION OR SAVINGS BANK SPECIFIED IN SECTION 5102 OF THE FINANCIAL CODE AND AUTHORIZED TO DO BUSINESS IN THIS STATE:

All right, title, and interest conveyed to and now held by the trustee in the hereinafter described property under and pursuant to a Deed of Trust described as:

More fully described in said Deed of Trust.

Street Address or other common designation of real property: **7322 West 90th Street, Los Angeles, CA 90045**
A.P.N.: **4119-017-004**

The undersigned Trustee disclaims any liability for any incorrectness of the street address or other common designation, if any, shown above.

The sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by the Deed of Trust with interest thereon, as provided in said note(s), advances, under the terms of said Deed of Trust, fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust. The total amount of the unpaid balance of the obligation secured by the property to be sold and reasonable estimated costs, expenses and advances at the time of the initial publication of the Notice of Sale is:
**$ 1,331,790.73**.

**Note:** Because the Beneficiary reserves the right to bid less than the total debt owed, it is possible that at the time of the sale the opening bid may be less than the total debt.

**If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee, and the successful bidder shall have no further recourse.**

The beneficiary of the Deed of Trust has executed and delivered to the undersigned a written request to commence foreclosure, and the undersigned caused a Notice of Default and Election to Sell to be recorded in the county where the real property is located.

TS No.: 2013-04222-CA

## NOTICE OF TRUSTEE'S SALE

**NOTICE TO POTENTIAL BIDDERS:** If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on this property.

**NOTICE TO PROPERTY OWNER:** The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call **(866)-960-8299** or visit this Internet Web site http://www.altisource.com/MortgageServices/DefaultManagement/TrusteeServices.aspx using the file number assigned to this case **2013-04222-CA**. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site. The best way to verify postponement information is to attend the scheduled sale.

> **Western Progressive, LLC, as Trustee for beneficiary**
> **C/o 1500 Palma Drive, Suite 237**
> **Ventura, CA 93003**
> **Sale Information Line:  (866) 960-8299**
> http://www.altisource.com/MortgageServices/DefaultManagement/TrusteeServices.aspx

Date: March 22, 2019

**Iman Walcott, Trustee Sale Assistant**

**WESTERN PROGRESSIVE, LLC MAY BE ACTING AS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED MAY BE USED FOR THAT PURPOSE.**

Version 1.1 CA NOS 0817

Page 3 of 3

# EXHIBIT "6"

Repeat-cacb, PlnDue, Incomplete, RepeatPACER, DISMISSED

## U.S. Bankruptcy Court
## Central District of California (Los Angeles)
## Bankruptcy Petition #: 2:19-bk-24639-VZ

*Date filed:* 12/16/2019
*Assigned to:* Vincent P. Zurzolo  *Debtor dismissed:* 01/03/2020
Chapter 13  *341 meeting:* 01/23/2020
Voluntary
Asset

*Debtor disposition:* Dismissed for Failure to File
Information

| | |
|---|---|
| *Debtor* | represented by **Claire M Almeda** |
| **Claire M Almeda** | PRO SE |
| 322 Culver Blvd Apt. #331 | |
| Playa Del Rey, CA 90293 | |
| LOS ANGELES-CA | |
| SSN / ITIN: xxx-xx-7916 | |
| *aka* **Claire Almeda** | |

*Trustee*
**Nancy K Curry (TR)**
1000 Wilshire Blvd., Suite 870
Los Angeles, CA 90017
213-689-3014

*U.S. Trustee*
**United States Trustee (LA)**
915 Wilshire Blvd, Suite 1850
Los Angeles, CA 90017
(213) 894-6811

| Filing Date | # | Docket Text |
|---|---|---|
| 12/16/2019 | <u>1</u><br>(10 pgs; 3 docs) | Chapter 13 Voluntary Petition Individual - Fee Amount: $310.00; filed by Claire M Almeda - Summary of Assets and Liabilities (Form 106Sum or 206Sum ) due 12/30/2019. Schedule A/B: Property (Form 106A/B or 206A/B) due 12/30/2019. Schedule C: The Property You Claim as Exempt (Form 106C) due 12/30/2019. Schedule D: Creditors Who Have Claims Secured by Property (Form 106D or 206D) due 12/30/2019. Schedule E/F: Creditors Who Have Unsecured Claims (Form 106E/F or 206E/F) due 12/30/2019. Schedule G: Executory Contracts and Unexpired Leases (Form 106G or 206G) due 12/30/2019. Schedule H: Your Codebtors (Form 106H or 206H) due 12/30/2019. Schedule I: Your Income (Form 106I) due 12/30/2019. Schedule J: Your Expenses (Form 106J) due 12/30/2019. Declaration About an Individual |

Page 61

| | | |
|---|---|---|
| | | Debtors Schedules (Form 106Dec) due 12/30/2019. Statement of Financial Affairs (Form 107 or 207) due 12/30/2019. Chapter 13 Plan (LBR F3015-1) due by 12/30/2019. Chapter 13 Statement of Your Current Monthly Income and Calculation of Commitment Period (Form 122C-1) Due: 12/30/2019. Chapter 13 Calculation of Your Disposable Income (Form 122C-2) Due: 12/30/2019. Cert. of Credit Counseling due by 12/30/2019. Statement of Related Cases (LBR Form F1015-2) due 12/30/2019. Declaration by Debtors as to Whether Income was Received from an Employer within 60-Days of the Petition Date (LBR Form F1002-1) due by 12/30/2019. Verification of Master Mailing List of Creditors (LBR Form F1007-1) due 12/30/2019. Incomplete Filings due by 12/30/2019. (Milano, Sonny) (Entered: 12/16/2019) |
| 12/16/2019 | 2<br>(3 pgs) | Meeting of Creditors 341(a) meeting to be held on 1/23/2020 at 10:00 AM at RM 1, 915 Wilshire Blvd., 10th Floor, , Los Angeles, CA 90017.Objection 523 Complaint Due: 3/23/2020. Proofs of Claims due by 2/24/2020. Government Proof of Claim due by 6/15/2020. Confirmation hearing to be held on 11/16/2020 at 09:00 AM at Crtrm 1368, 255 E Temple St., Los Angeles, CA 90012. The case judge is Vincent P. Zurzolo (Milano, Sonny) (Entered: 12/16/2019) |
| 12/16/2019 | 3 | Statement About Your Social Security Number (Official Form 121); filed by Debtor Claire M Almeda . (Milano, Sonny) (Entered: 12/16/2019) |
| 12/16/2019 | | Receipt of Chapter 13 Filing Fee - $310.00 by 71. Receipt Number 20238839. (admin) (Entered: 12/16/2019) |
| 12/17/2019 | | Notice of Debtor's Prior Filings for debtor Claire M Almeda Case Number 17-20978, Chapter 13 filed in California Central Bankruptcy on 09/07/2017 , Dismissed for Failure to File Information on 09/25/2017; Case Number 18-23335, Chapter 13 filed in California Central Bankruptcy on 11/13/2018 , Dismissed for Failure to File Information on 12/03/2018; Case Number 17-20053, Chapter 13 filed in California Central Bankruptcy on 08/16/2017 , Dismissed for Failure to File Information on 09/05/2017; Case Number 19-16090, Chapter 13 filed in California Central Bankruptcy on 05/24/2019 , Dismissed for Failure to File Information on 06/11/2019. (Admin) (Entered: 12/17/2019) |
| 12/17/2019 | 4<br>(2 pgs) | Chapter 13 Trustee's Notice of Requirements *with proof of service*. (Curry (TR), Nancy) (Entered: 12/17/2019) |
| 12/18/2019 | 5<br>(4 pgs) | BNC Certificate of Notice (RE: related document(s)2 Meeting of Creditors Chapter 13) No. of Notices: 3. Notice Date 12/18/2019. (Admin.) (Entered: 12/18/2019) |
| 12/18/2019 | 6 | BNC Certificate of Notice (RE: related document(s)1 |

| | | |
|---|---|---|
| | (2 pgs) | Voluntary Petition (Chapter 13) filed by Debtor Claire M Almeda) No. of Notices: 1. Notice Date 12/18/2019. (Admin.) (Entered: 12/18/2019) |
| 12/18/2019 | <u>7</u><br>(2 pgs) | BNC Certificate of Notice (RE: related document(s)<u>1</u> Voluntary Petition (Chapter 13) filed by Debtor Claire M Almeda) No. of Notices: 1. Notice Date 12/18/2019. (Admin.) (Entered: 12/18/2019) |
| 01/03/2020 | <u>8</u><br>(1 pg) | Order and Notice of Dismissal for Failure to File Schedules, Statements, and/or Plan - DEBTOR Dismissed (BNC) (Mohammad, Sandy) (Entered: 01/03/2020) |
| 01/05/2020 | <u>9</u><br>(2 pgs) | BNC Certificate of Notice (RE: related document(s)<u>8</u> ORDER and notice of dismissal for failure to file schedules, statements, and/or plan (CACB AutoDismiss) (BNC)) No. of Notices: 2. Notice Date 01/05/2020. (Admin.) (Entered: 01/05/2020) |

### PACER Service Center

| Transaction Receipt | | | |
|---|---|---|---|
| 01/08/2020 17:20:51 | | | |
| **PACER Login:** | Hcohen119600:2559545:0 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 2:19-bk-24639-VZ Fil or Ent: filed From: 10/10/2017 To: 1/8/2020 Doc From: 0 Doc To: 99999999 Term: included Format: html Page counts for documents: included |
| **Billable Pages:** | 2 | **Cost:** | 0.20 |

# EXHIBIT "7"

From: Case 2019-24639-AHZ ck@Docc10m> Filed 01/10/20 Entered 01/10/20 13:43:36 Desc
Sent: Thursday, January 2, 2020 7:34 AM
To: Asya Gomelsky <asya@strategicla.com>; Ian Fleishman <ian@strategicla.com>
Subject: FW: Received Fax File: 2013-04222-CA, PHH Loan: 7143216633 *** Bk 19-24639 *** Sold to Third Party
Importance: High

Main Document    Page 65 of 78

Note: This email originated from outside your organization.

Good morning:

We received the attached BK notice on the above referenced property.  Unfortunately since the schedules haven't been filed yet we are unable to issue the TDUS.  Per PACER the deadline to file the schedules was 12/30/2019.  We will continue to monitor this file and advise once we can confirm if the property is included.

Let me know if you have any questions.

1/3/2020              RE: Received Fax File: 2013-04222-CA, PHH Loan: 7143216633 *** Bk 19-24639 *** Sold to Third Party



**Stephanie M. Spurlock | Senior Manager, Trustee Services**

stephanie.spurlock@altisource.com

P: (877) 839-7117 | ext. 257284

Altisource®

Office Location: Atlanta

Mailing Address:

P.O. Box 105460

Atlanta, GA 30348-5460

www.altisource.com

*********************************************************************************************************************************
This email message and any attachments are intended solely for the use of the addressee. If you are not the intended recipient, you are prohibited from reading, disclosing, reproducing, distributing, disseminating or otherwise using this transmission. If you have received this message in error, please promptly notify the sender by reply email and immediately delete this message from your system. This message and any attachments may contain information that is confidential, privileged or exempt from disclosure. Delivery of this message to any person other than the intended recipient is not intended to waive any right or privilege. Message transmission is not guaranteed to be secure or free of software viruses.
*********************************************************************************************************************************

ATTN: Bankruptcy Department.

ATTached.


TS# 2013 - 0422 2 - CA.

Address# 7322 West 90th st
Los Angeles CA 90045

BK# 2:19 - BK - 24639 - VZ
AND ALL FILE ATTached
Included Creditors. Western progressive
Acct# 714321 - 6633.

Deed of Quit cleim ATTached.

Sale date was on 12-18-19


Tel # 866-960-8299
FAX# 866-960-8298

United States Bankruptcy Court
Central District of California

## Notice of Bankruptcy Case Filing

A bankruptcy case concerning the debtor(s) listed below was filed under Chapter 13 of the United States Bankruptcy Code, entered on 12/16/2019 at 3:33 PM and filed on 12/16/2019.

**Claire M Almeda**
322 Culver Blvd Apt. #331
Playa Del Rey, CA 90293
SSN / ITIN: xxx-xx-7916
*aka* **Claire Almeda**

The bankruptcy trustee is:

**Nancy K Curry (TR)**
1000 Wilshire Blvd., Suite 870
Los Angeles, CA 90017
213-689-3014

The case was assigned case number 2:19-bk-24639-VZ to Judge Vincent P. Zurzolo.

In most instances, the filing of the bankruptcy case automatically stays certain collection and other actions against the debtor and the debtor's property. Under certain circumstances, the stay may be limited to 30 days or not exist at all, although the debtor can request the court to extend or impose a stay. If you attempt to collect a debt or take other action in violation of the Bankruptcy Code, you may be penalized. Consult a lawyer to determine your rights in this case.

If you would like to view the bankruptcy petition and other documents filed by the debtor, they are available at our *Internet* home page www.cacb.uscourts.gov or at the Clerk's Office, 255 East Temple Street,, Los Angeles, CA 90012.

You may be a creditor of the debtor. If so, you will receive an additional notice from the court setting forth important deadlines.

**Kathleen J. Campbell
Clerk, U.S. Bankruptcy
Court**



| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 12/17/2019 12:49:49 | | |
| eugene57:5778171:0 | **Client Code:** | |

# EXHIBIT "8"

| | | | Doc Type | CI | Rec Date | Doc ID | Party 1 | Party 2 | Legals | Remarks |
|---|---|---|---|---|---|---|---|---|---|---|
| ➡ | | | Deed | | 11/29/2005 | 2891197 | STURDEVANT LINDA D STURDEVANT ROBERT JAMES(+1) | WASHINGTON RASHAAN J | Lt 175 Map 378/37 (Tr 14439) | Co: FID, $856.90F (county TT), $779,000.00(est), APN(s): 4119-017-004 |
| | ✕ | | Trust Deed/Deed of Trust | 20 | 11/29/2005 | 2891198 | WASHINGTON RASHAAN J WASHINGTON ARGENT MORTGAGE 623200 | ARGENT MORTGAGE COMPANY LLC | Lt 175 Map 378/37 (Tr 14439) | Co: FID, $623,200.00, APN(s): 4119-017-004 |
| | ✕ | | Trust Deed/Deed of Trust, Default | 20 | 1/25/2008 | 159145 | WASHINGTON RASHAAN J WASHINGTON 2891198 112905 | | Lt 175 Map 378/37 (Tr 14439) | Ref: 11/29/2005 2891198 |
| | ✕ | | trust deed/deed of trust, assignment | 20 | 1/31/2008 | 186953 | argent mortgage company llc washington rashaan j(+1) | deutsche bank national trust company | lt 175 map 378/37 (tr 14439) | co: stw, ref: 11/29/2005 2891198apn(s): 4119-017-004 |
| | ✕ | | trust deed/deed of trust, substitution of trustee | 20 | 5/1/2008 | 766829 | deutsche bank national trust company trustee washington rashaan j(+1) | cr title services inc trustee | lt 175 map 378/37 (tr 14439) | co: stw, ref: 11/29/2005 2891198 |
| | ✕ | | trust deed/deed of trust, trustees sale | 20 | 5/1/2008 | 766830 | washington rashaan j washington 2891198 112905 * t | | lt 175 map 378/37 (tr 14439) | co: stw, ref: 11/29/2005 2891198apn(s): 4119-017-004 |
| | ✕ | | trust deed/deed of trust, substitution of trustee | 20 | 6/19/2008 | 1091024 | argent securities inc 2006 w1 washington rashaan j(+2) | cr title services inc | lt 175 map 378/37 (tr 14439) | co: stw, ref: 11/29/2005 2891198 |
| | ✕ | | trust deed/deed of trust, trustees sale | 20 | 6/19/2008 | 1091025 | washington rashaan j washington 2891198 112905 * t | | lt 175 map 378/37 (tr 14439) | co: stw, ref: 11/29/2005 2891198apn(s): 4119-017-004 |
| | ✕ | | trust deed/deed of trust, substitution of trustee | 20 | 10/7/2008 | 1793669 | registered holders of argent securities inc 2006 w1 deutsche bank national trust company trustee (+2) | cr title services inc | lt 175 map 378/37 (tr 14439) | co: stw, ref: 11/29/2005 2891198 |

**Lt 175 Map 378/37**
Los Angeles, California

Page 11 of 17

Non-Order Search
Printed by fntmclair on 1/9/2020 10:15:19 AM

Page 69

| | | | | Doc Type | CI | Rec Date | Doc ID | Party 1 | Party 2 | Legals | Remarks |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | ✕ | | | trust deed/deed of trust, trustees sale | 20 | 10/7/2008 | 1793670 | washington rashaan j washington 2891198 112905 *        t | | lt 175 map 378/37 (tr 14439) | co: stw, ref: 11/29/2005 2891198apn (s): 4119-017-004 |
| | ✕ | | | trust deed/deed of trust, assignment | 20 | 5/21/2009 | 757099 | argent mortgage company llc washington rashaan j(+1) | deutsche bank national trust company trustee certificateholders for argent securities inc | lt 175 map 378/37 (tr 14439) | ref: 11/29/2005 2891198 |
| | ✕ | | | trust deed/deed of trust, trustees sale | 20 | 6/29/2009 | 971892 | washington rashaan j washington 2891198 112905 *        t | | lt 175 map 378/37 (tr 14439) | ref: 11/29/2005 2891198apn(s): 4119-017-004 |
| | ✕ | | | trust deed/deed of trust, assignment | 20 | 1/15/2010 | 64077 | argent mortgage company llc washington rashaan j(+2) | certificateholders for argent securities inc deutsche bank national trust company trustee | lt 175 map 378/37 (tr 14439) | ref: 11/29/2005 2891198 |
| | ✕ | | | trust deed/deed of trust, trustees sale | 20 | 1/12/2011 | 61396 | washington rashaan j washington 2891198 112905 *        t | | lt 175 map 378/37 (tr 14439) | co: stw, ref: 11/29/2005 2891198apn (s): 4119-017-004 |
| | ✕ | | | notice of default prop, rescission | 20 | 9/7/2011 | 1206337 | washington rashaan j washington 2891198 112905 | | lt 175 map 378/37 (tr 14439) | co: stw, ref: 11/29/2005 2891198; 1/25/2008 159145apn(s): 4119-017-004 |
| | ✕ | | | Trust Deed/Deed of Trust, Default | 20 | 12/14/2011 | 1690073 | WASHINGTON RASHAAN J WASHINGTON 2891198 112905 | | Lt 175 Map 378/37 (Tr 14439) | Ref: 11/29/2005 2891198 |
| | ✕ | | | trust deed/deed of trust, substitution of trustee | 20 | 3/15/2012 | 401446 | argent securities inc washington rashaan j(+2) | power default services inc | lt 175 map 378/37 (tr 14439) | co: svl, ref: 11/29/2005 2891198 |
| | ✕ | | | trust deed/deed of trust, trustees sale | 20 | 3/15/2012 | 401447 | washington rashaan j washington 2891198 112905 *        t | | lt 175 map 378/37 (tr 14439) | co: svl, ref: 11/29/2005 2891198apn (s): 4119-017-004 |
| | ✕ | | | notice of default prop, rescission | 20 | 12/10/2013 | 1741016 | washington rashaan j washington 2891198 112905 | | lt 175 map 378/37 (tr 14439) | ref: 11/29/2005 2891198; 12/14/2011 1690073 |

**Lt 175 Map 378/37**
Los Angeles, California

Page 12 of 17

Non-Order Search
Printed by fntmdiart on 1/9/2020 10:15:19 AM

Page 70

| | | | Doc Type | CI | Rec Date | Doc ID | Party 1 | Party 2 | Legals | Remarks |
|---|---|---|---|---|---|---|---|---|---|---|
| | × | | trust deed/deed of trust, substitution of trustee | 20 | 1/27/2014 | 87240 | washington rashaan j deutsche bank national trust company trustee (+2) | western progressive llc | lt 175 map 378/37 (tr 14439) | co: pmt, ref: 11/29/2005 2891198 |
| | × | | trust deed/deed of trust, default | 20 | 2/14/2014 | 162306 | washington rashaan j washington 2891198 112905 | | lt 175 map 378/37 (tr 14439) | ref: 11/29/2005 2891198apn(s): 4119-017-004 |
| | × | | trust deed/deed of trust, trustees sale | 20 | 10/29/2014 | 1143411 | western progressive, llc | washington,rashaan j | lt 175 map 378/37 (tr 14439) | ref: 11/29/2005 2891198apn(s): 4119-017-004 |
| | × | | trust deed/deed of trust, trustees sale | 20 | 3/10/2015 | 255656 | western progressive, llc | washington,rashaan j | lt 175 map 378/37 (tr 14439) | ref: 11/29/2005 2891198apn(s): 4119-017-004 |
| | × | | trust deed/deed of trust, trustees sale | 20 | 12/18/2015 | 1593943 | western progressive, llc | washington,rashaan j | lt 175 map 378/37 (tr 14439) | ref: 11/29/2005 2891198apn(s): 4119-017-004 |
| | × | | trust deed/deed of trust, trustees sale | 20 | 2/13/2017 | 178024 | western progressive, llc | washington,rashaan j | lt 175 map 378/37 (tr 14439) | co: ptc, ref: 11/29/2005 2891198apn(s): 4119-017-004 |
| | × | | trust deed/deed of trust, trustees sale | 20 | 8/14/2018 | 816951 | western progressive, llc | washington,rashaan j | lt 175 map 378/37 (tr 14439) | co: ptc, ref: 11/29/2005 2891198apn(s): 4119-017-004 |
| | × | | trust deed/deed of trust, trustees sale | 20 | 3/26/2019 | 260657 | western progressive, llc | washington,rashaan j | lt 175 map 378/37 (tr 14439) | co: pmt, ref: 11/29/2005 2891198apn(s): 4119-017-004 |
| | ? | | Trust Deed/Deed of Trust, Request for Notice | | 11/29/2005 | 2891199 | WASHINGTON RASHAAN J WASHINGTON NO REF REQ | ARGENT MORTGAGE COMPANY LLC | Lt 175 Map 378/37 (Tr 14439) | Co: FID |
| | × | | Trust Deed/Deed of Trust | | 11/29/2005 | 2891199 | WASHINGTON RASHAAN J WASHINGTON ARGENT MORTGAGE 155800 | ARGENT MORTGAGE COMPANY LLC | Lt 175 Map 378/37 (Tr 14439) | Co: FID, $155,800.00 |

**Lt 175 Map 378/37**                     Page 13 of 17                                    Non-Order Search
Los Angeles, California                                                      Printed by fntmdiar on 1/9/2020 10:15:19 AM

Page 71

| | | | Doc Type | CI | Rec Date | Doc ID | Party 1 | Party 2 | Legals | Remarks |
|---|---|---|---|---|---|---|---|---|---|---|
| | ➡ | | Deed | | 12/16/2005 | 3108426 | WASHINGTON RASHAAN J WASHIWASHINGTON RASHAAN J& | WASHINGTON RASHAAN J CHAMBERS TANYA LOUISE | Lt 175 Map 378/37 (Tr 14439) | APN(s): 4119-017-004 |
| | ➡ | | QuitClaim | | 2/22/2008 | 315672 | WASHINGTON RASHEM CHAMBER TANYA(+1) | SUMER POTENCIANA | Lt 175 Map 378/37 (Tr 14439) | APN(s): 4119-017-004 |
| | ➡ | | QuitClaim | | 4/24/2008 | 724445 | SUNER POTENCIANA M SUNEROWNER * | MALLO CONEIS M | Lt 175 Map 378/37 (Tr 14439) | APN(s): 4119-017-004 |
| | ➡ | | QuitClaim | | 5/15/2008 | 868774 | MALLO CONNIC MALLOSUNER POTENCIANA M& * | MALLO CONNIC M SUNER POTCNCIANA M | Lt 175 Map 378/37 (Tr 14439) | APN(s): 4119-017-004 |
| | ➡ | | QuitClaim | | 7/15/2009 | 1066666 | MALLO CONNIE M SUNER POTENCIOANA (+1) | MALLO CONNIE ESPANOLA EUGENE(+1) | Lt 175 Map 378/37 (Tr 14439) | APN(s): 4119-017-004 |
| | ➡ | | QuitClaim | | 5/26/2010 | 717186 | MALLO CONNIE M SUNER POTENCIDND (+1) | MALLO EUGENE ESPANOLA EUGENE(+2) | Lt 175 Map 378/37 (Tr 14439) | APN(s): 4119-017-004 |
| | ➡ | | QuitClaim | | 6/9/2010 | 787421 | MALLO EUGENE MALLOMALLO EUGENE& * | MALLO CONNIE MALLO EUGENE(+1) | Lt 175 Map 378/37 (Tr 14439) | APN(s): 4119-017-004 |
| | | | Policy, Preliminary | | 1/26/2011 | 0 | RASHAAN J. WASHINGTON, AND TANYA LOUISE CHAMBERS, AS JOINT TENANTS, SUBJECT TO ITEM NO. 10, 11, 12, 12, 14 AND 15 | | Lt 175 Map 378/37 (Tr 14439) | Co: ZZZ,  SOURCE: SIMON WORKSHEET [AA], APN(s): 4119-017 -004 |
| | | | Open Order | | 1/31/2011 | 030175685 | 36 02 | 030175685 013111 | Lt 175 Map 378/37 (Tr 14439) | Co: FID |
| | | | Open Order | | 12/16/2011 | 1043531 | 21 01 | 1043531 121611 | Lt 175 Map 378/37 (Tr 14439) | Co: CTI |

**Lt 175 Map 378/37**    Page 14 of 17    Non-Order Search
Los Angeles, California    Printed by fntmclair on 1/9/2020 10:15:19 AM

Page. 72

| | | | Doc Type | CI | Rec Date | Doc ID | Party 1 | Party 2 | Legals | Remarks |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Open Order | | 3/12/2012 | 015535514 | 21 01 | 015535514 031212 | Lt 175 Map 378/37 (Tr 14439) | Co: CTI |
| | | | Open Order | | 3/12/2012 | 016856690 | 21 01 | 016856690 031212 | Lt 175 Map 378/37 (Tr 14439) | Co: CTI |
| | | | Open Order | | 3/12/2012 | 1040361 | 21 01 | 1040361 031212 | Lt 175 Map 378/37 (Tr 14439) | Co: CTI |
| | | | Open Order | | 10/4/2012 | 256256256 | 73 02 | 256256256 100412 | Lt 175 Map 378/37 (Tr 14439) | Co: PRV |
| | | | Open Order | | 3/8/2016 | 714321663 | | | Lt 175 Map 378/37 (Tr 14439) | Co: PTC,  TU: 01 Dpt: Irvine |
| | | | Open Order | | 3/30/2017 | 23814 | | | Lt 175 Map 378/37 (Tr 14439) | Co: ADV,  TU: 50 Dpt: Riverside - Title |
| | | | Open Order | | 9/8/2017 | 1034 | | | Lt 175 Map 378/37 (Tr 14439) | Co: ADV,  TU: 50 Dpt: Riverside - Title |
| | | | Open Order | | 10/12/2017 | 1061 | | | Lt 175 Map 378/37 (Tr 14439) | Co: ADV,  TU: 50 Dpt: Riverside - Title |
| | | | Open Order | | 9/25/2018 | 714321663 3 | | | Lt 175 Map 378/37 (Tr 14439) | Co: PTC,  TU: 01 Dpt: Irvine |
| | | | Open Order | | 6/19/2019 | 714321663 3_1 | | | Lt 175 Map 378/37 (Tr 14439) | Co: PTC,  TU: 01 Dpt: Irvine |
| | | | Policy, Preliminary | | 12/11/2019 | 0 | RASHAAN J. WASHINGTON AND TANYA LOUISE CHAMBERS, AS JOINT TENANTS, SUBJECT TO INSTRUMENT NOS. 2008-315672, 2008-724445, 2008-868774, 2009-1066666, 2010-717186 AND 2010-787421, AS SHOWN ON SCHEDULE B HEREIN | | Lt 175 Map 378/37 (Tr 14439) | Co: ZZZ,  SOURCE: IMPACT WORKSHEET [AA], APN(s): 4119-017-004 |
| | | | Open Order | | 12/23/2019 | 00244407 | | | Lt 175 Map 378/37 (Tr 14439) | Co: FID,  TU: 01 Dpt: Sherman Oaks |

**Lt 175 Map 378/37**
Los Angeles, California

Page 15 of 17

Non-Order Search

Printed by fntmdiarru on 1/9/2020 10:15:19 AM

Page 73

| | | | Doc Type | CI | Rec Date | Doc ID | Party 1 | Party 2 | Legals | Remarks |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | |

**End of Search.**
**165 Records Found.**

**Lt 175 Map 378/37**
Los Angeles, California

Page 16 of 17

Non-Order Search
Printed by fntmclair on 1/9/2020 10:15:19 AM

Page 74

**Property Search**


**TITLEPOINT®**

Los Angeles, California
**Searched: Lt 175 Map 378/37**
**Sub/Plat: TRACT 14439**
Non-Order Search
Company: FIDELITY NATIONAL TITLE | MCL | 04 | CRN: 00036-00005

| | |
|---|---|
| Property Start: | 1/2/1947 |
| Property Cover: | 12/30/2019 |
| Searched By: | FNT MCL ALL |
| Searched On: | 1/9/2020 01:03 PM |

---

**From**

| Legal Description | Rel. Type | Created | Vacated | Vacated\Replat |
|---|---|---|---|---|
| **Lt 175 Map 378/37 (Tr 14439)** | | | | |
| From: Rancho 1/507 | CF | 5/27/1875 | Full | 9/25/2014 |
| Map 378/37 (Tr 14439) | | 6/13/1950 | | |
| From: Rancho 1/507 | CF | 5/27/1875 | | 9/25/2014 |
| Rancho 1/507 | | 5/27/1875 | Full | 9/25/2014 |

**To**

| Legal Description | Rel. Type | Created | Vacated | Vacated\Replat |
|---|---|---|---|---|
| **No Overlying for:** | | | | |
| Lt 175 Map 378/37 (Tr 14439) | | 6/13/1950 | | |

# EXHIBIT "9"

Form odspb–odspab/autodismi
Rev. 06/2017

# United States Bankruptcy Court
# Central District of California

**255 East Temple Street, Los Angeles, CA 90012**

# ORDER AND NOTICE OF DISMISSAL FOR
# FAILURE TO FILE SCHEDULES, STATEMENTS AND/OR PLAN

**DEBTOR INFORMATION:**
Claire M Almeda
aka Claire Almeda

**BANKRUPTCY NO.**  2:19–bk–24639–VZ

**CHAPTER**  13

**Last four digits of Social–Security or Individual Taxpayer–Identification (ITIN) No(s)., (if any):**   xxx–xx–7916
**Employer Tax–Identification (EIN) No(s).(if any):**   N/A
**Debtor Dismissal Date:** 1/3/20

**Address:**
322 Culver Blvd Apt. #331
Playa Del Rey, CA 90293

It appearing that the debtor(s) in the above–captioned case has failed to file all the documents required under FRBP 1007 or 3015(b) within 14 days after the filing of the petition and no motion for an order extending the time to file the required documents has been timely filed in accordance with FRBP 1007(a)(5) or 3015(b),

IT IS HEREBY ORDERED THAT:

1)     The case is dismissed.

2)     The automatic stay is vacated.

3)     Any discharge entered in this case is vacated.

4)     The Court retains jurisdiction on all issues involving sanctions, any bar against being a debtor in bankruptcy, all issues arising under Bankruptcy Code §§ 105, 109(g), 110, 329, 349, and 362, and to any additional extent provided by law.

By the Court,

Dated: January 3, 2020

**Kathleen J. Campbell**
Clerk of Court

Form odspb–odspab/autodismi Rev. 06/2017

**8 / AUT**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

5305 ANDASOL AVE., ENCINO, CA 91316

A true and correct copy of the foregoing document entitled: **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (with supporting declarations) (REAL PROPERTY)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):** Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 1/10/2020 , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Nancy K Curry (TR)    TrusteeECFMail@gmail.com
United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL:**
On (*date*) 1/10/2020 , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Debtor, Claire M. Almeda, 322 Culver Bl., Apt. #331, Playa Del Rey, CA 90293
borrower Rashaan J. Washington, 7322 W. 90th St., Los Angeles, CA 90045
Owners, Eugene, Connie & Leopoldo Mallo, 7322 W. 90th St., Los Angeles, CA 90045
Lender, Ocwen Loan Serv c/o Western Progressive LLC 18377 Beach Bl. #210, Huntington Beach, CA 92648

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served):** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) 1/10/2019 , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Hon. Vincent P. Zurzolo, US Bankruptcy Court, 255 E. Temple St., Ct 1368, Los Angeles, CA 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 1/10/2020 | HARRIS L. COHEN | |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.